UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

_____
                                                        :
POMAQUIZA, Pedro                                        :
                                                        :
                              Plaintiff,                :   Civil Action No. 3:17-CV-01549
V.                                                      :
                                                        :
JEFFERSON SESSIONS, III                                 :
        *United States Attorney General*;               :
                                                        :
ELAINE DUKE                                             :
        *Secretary of D.H.S.*;                          :
                                                        :
C.M. CRONEN                                             :
        *Field Office Director – Boston Field Office*   : September 14, 2017
                                                        :
                              Defendants.               :
_____:

MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF THE
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
<u>AND TEMPORARY RESTRAINING ORDER</u>

The plaintiff, Pedro Pomaquiza, submits this Memorandum and Points of Authorities in support of his Motion for a Preliminary Injunction and Temporary Restraining Order.

I.    <u>Summary of Argument</u>

The obvious issue before the Court is whether this Preliminary Injunction is being sought on the back of a complaint that is ultimately seeking a judicial review of the Defendants' discretionary removal decision – and thus fouls INA § 242(g).

Mr. Pomaquiza is subject to a final administrative order of removal from the Boston Immigration Court and a final administrative action in the form of a denied Form I-246.[1]

_____

[1] <u>See</u>, 8 C.F.R. § 241.6 for governing regulation. Hereinafter referred to as "Form I-246" or alternately "Stay Request."

As alleged in the Complaint, the decision denying Mr. Pomaquiza's Form I-246 was arbitrary and capricious and in violation of the Administrative Procedures Act, such that District Court may make a limited review of that decision under the APA and specifically under 5 U.S.C. §§ 704 or 5 U.S.C. 706.  Accordingly, this action does not attack the Order of Removal, which under the current state of the law is subject to INA § 242(g).  This action does, however, challenge the denial of the Form I-246 and seeks a review both as to whether the decision was arbitrary and capricious as well as a declaration that the decision process is arbitrary.  Specifically, Mr. Pomaquiza challenges whether:

    a.    the denial of the Stay Request was arbitrary and capricious; and/or

    b.    the process by which the Stay Request was considered was arbitrary and capricious; and/or

    c.    Mr. Pomaquiza was <u>not</u> eligible for the Stay Request under the Defendants' current regulations and policies.

II.    <u>Legal Standards</u>

Mr. Pomaquiza seeks a preliminary injunction and temporary restraining order. The Second Circuit has recently made clear that "[a] preliminary injunction is an equitable remedy and an act of discretion by the court." <u>Am. Civil Liberties Union v. Clapper</u>, 804 F.3d 617, 2015 U.S. App. LEXIS 18862, at *13, 2015 WL 6516757, at *5 (2d Cir. Oct. 29, 2015). The Court's exercise of discretion, however, is limited by a well-established criteria that require a party to make certain threshold showings in order to qualify for preliminary injunctive relief. "A party seeking a preliminary injunction must generally show a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest." <u>Id</u>. (citing <u>Winter v. NRDC</u>, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d

249 (2008)); see also Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35-38 (2d Cir. 2010). The first of the four factors -- likelihood of success – is surely to be the most vigorously argued issue before the Court.  Specifically, whether this Court has jurisdiction. The three remaining factors: harm, balance of the equities, and public interest, will be addressed last in this memorandum and in summary. Those remaining factors are less controversial for purposes of a preliminary injunction and tip in favor of Mr. Pomaquiza once, and if, the Court is comfortable that there is a reasonable likelihood of success on the issue of jurisdiction.

III.    Background

Mr. Pomaquiza is a native and citizen of Ecuador.  Mr. Pomaquiza's personal story is relevant to the Court's decision in this case, because it informs the Defendants' regulations and policies as to discretion and eligibility for a Form I-246.

As alleged in the Complaint and further established in the administrative record, Mr. Pomaquiza, became an orphan in Ecuador at the age of ten.  Looking for work and food, Mr. Pomaquiza moved to Cuenca, Ecuador where he worked as a bus assistant. He was paid with food, but not money.  His living accommodations at the time were without gas, water, or electricity.  After turning eighteen he was able to find work that paid money, but the money was insufficient to sustain him with adequate housing. He was also responsible for providing for his younger brothers and sisters.  Upon turning the age of 20, he fled this poverty for the United States and the opportunity to earn sufficient money to support his brothers and sisters in Ecuador.

Mr. Pomaquiza entered the United States without inspection in January 2001 and while living here in the United States learned English, started his own construction

company, and bought a home in Waterbury, Connecticut.  He also began a family with his foreign-born wife and now has five children -- four of whom are United States children. Two of his children have significant chronic medical conditions that require careful medical monitoring.  None of his children are fluent in Spanish sufficient for education in a foreign language.  Moreover, the children have not known any reality other than the secure middle-class existence that Mr. Pomaquiza has managed to provide for them in Waterbury, Connecticut.

On December 30, 2006, Mr. Pomaquiza was in Vermont for a contract construction job, when three of his workers were arrested and turned over to ICE.  Mr. Pomaquiza, with the help of two other workers, who had legal status, drove to pay a bond and obtain the release of the detained workers.  While he waited in the parking lot of the Vermont State Police barracks, ICE officers came out, knocked on the window of his vehicle and arrested him. Mr. Pomaguiza was placed into Removal Proceedings in Boston Massachusetts. His attorney filed to suppress the Notice to Appear (NTA) in Removal proceedings. The motion was denied and he was ordered removed from the United States, on or about May 19, 2009.  Mr. Pomaguiza filed appeals and eventually lost at the First Circuit Court of Appeals.  He has no criminal record.

In 2012, Mr. Pomaquiza began reporting to ICE. He filed an I-246, which was approved and renewed multiple times.  On February 4, 2016, he appeared at ICE and submitted a new Form I-246, which was approved. On September 5, 2017, he again submitted a new Form I-246, but was denied with no objective change in his circumstances.  He was also told that he must abandon his family, business, and depart the United States in 30 days, on or before October 5, 2017.

IV.    <u>Argument</u>

At the outset, this memorandum is not intended to substitute for a fully briefed objection to an anticipated jurisdictional Motion to Dismiss under Fed. R. Civ. P 12(b)(1) or (b)(6) that will likely be filed by the Defendants.  Rather, this memorandum is to focus on the likelihood of success of the underlying claims in Mr. Pomaquiza's complaint for the purpose of a preliminary injunction. In making the following arguments for the preliminary injunction, Mr. Pomaquiza asserts that the APA embodies "a basic presumption of judicial review." <u>Abbott Laboratories v. Gardner</u>, 387 U.S. 136, 140 (1967). And further that: "[O]nly upon a showing of '*clear and convincing evidence*' of a contrary legislative intent should the courts restrict access to judicial review." <u>Id</u>. at 141 (emphasis added).  Despite the Defendants' expected arguments to the contrary, INA § 242(g) does not strip jurisdiction over review of a Form I-246 stay denial from this Court.

A.    <u>INA § 242(g) is not an impregnable wall surrounding the Defendants' ability to remove immigrants in general and Mr. Pomaquiza in particular.</u>

The Defendants are expected to argue that the Court is denied all review of removal decisions under INA 242(g).  The Defendants are also expected to argue that Congress specifically stripped jurisdiction from the District Courts and placed limited jurisdiction in the Circuit Courts of Appeals.  These arguments are best characterized as the "Wall Argument," to suggest that Congress has built a wall around all removal decisions made by the Defendants. But then the U.S. Supreme Court (uncharacteristically unanimous) decided that Motions to Reopen, once thought purely discretionary and safe behind the wall, were subject to Federal Court Review.  <u>Kucana v. Holder</u>, 130 S. Ct. 827, 840 (2010).  In <u>Kucana</u>, the Court observed: "The Board's discretionary authority to act

5

on a motion to reopen, we have thus far explained, is 'specified' not in a statute, but only in the Attorney General's regulation, which instructs: 'The decision to grant or deny a motion to reopen . . . is within the discretion of the Board, subject to the restrictions of this section. The Board has discretion to deny a motion to reopen even if the party moving has made out a *prima facie* case for relief.'" Id. 835 (quotations in original), citing 8 C.F.R. 1003.2(a)(regulations regarding motions to reopen.) The Court further observed that "[i]f Congress wanted the jurisdictional bar to encompass decisions specified as discretionary by regulation along with those made discretionary by statute, […], Congress could easily have said so." Kucana 130 S. Ct.  at 837.  As if to make sure there was no ambiguity in its decision the Supreme Court emphasized:

> … a paramount factor in the decision we render today. By defining the various jurisdictional bars by reference to other provisions in the INA itself, Congress ensured that it, and only it, would limit the federal courts' jurisdiction.  To  read  §  1252(a)(2)(B)(ii) [INA§242(g)]  to  apply  to matters where discretion is conferred on the Board by regulation, rather than on the Attorney General by statute, would ignore that congressional design. If the Seventh Circuit's construction of §1252(a)(2)(B)(ii) were to prevail, the Executive would have a free hand to shelter its own decisions from abuse-of-discretion appellate court review simply by issuing a regulation declaring those decisions "discretionary." Such an extraordinary delegation of authority cannot be extracted from the statute Congress enacted.

Id. at 840. The Kucana decision may be read to have taken all of the mortar out of the "Wall Argument" as to the Defendants' unfettered ability to act under INA § 242(g).  In its place, the Defendants are left with a pile of rocks that is far from being an impregnable wall. Moreover, Kucana highlighted the importance of scrutinizing any regulation that the Defendants may seek to shelter behind the wall to determine whether it is protected from an abuse-of-discretion review.

The Defendants may attempt to argue that Kucana did not directly apply to District Court review and that it was limited to Circuit Court jurisdiction.  But if the Defendants make this argument, they are only highlighting the fact that Stay Request does not belong behind the wall of INA § 242(g).  The regulation, 8 C.F.R. § 241.6, comes into play after there is a final order of removal. The Circuit Court would have no jurisdiction.  The regulation is independent of the order of removal and in that regard, is similar to a motion to reopen.

The concept of reviewability outside the context of a final order of removal was judicially recognize prior to the Kucana, decision.  For instance, the Eleventh Circuit found that a district court retained review under §242(a)(2)(B)(ii) over statutory eligibility issues related to Temporary Protected Status (TPS) even though the ultimate grant of TPS was in the unreviewable discretion of DHS. Mejia Rodriguez v. DHS, 562 F. 3d 1137 (11th Cir. 2009).[2]  In many ways, TPS is analogous to a Form I-246 Request for Stay, except that it is an individualized form temporary protected status as opposed to a class of individuals. Moreover, it is possible that after Kucana, the 11th Circuit in Mejia may have found discretion reviewable under the arbitrary and capricious standard of the APA.

Thus, even after considering the Defendants' arguments on eligibility the Court will likely find that it has jurisdiction to review the Form I-246 outside the wall of INA § 242(g) and thus a preliminary injunction should enter.

    B.    <u>The Form I-246 is creature of regulation and the discretion is self-subscribed by the Defendants.</u>

---

[2] To be clear, the 11th Circuit was not reviewing agency discretion, but rather review as to eligibility.  As alleged in the Complaint, review is also sought on Mr. Pomaquiza's eligibility for the Stay Request.

The Form I-246 is found in the Code of Federal Regulations at 8 C.F.R. § 241.6.

The regulations provide in pertinent part that:

> (a) Any request of an alien under a final order of deportation or removal for a stay of deportation or removal shall be filed on Form I-246, Stay of Removal, with the district director having jurisdiction over the place where the alien is at the time of filing. The Commissioner, Deputy Commissioner, Executive Associate Commissioner for Field Operations, Deputy Executive Associate Commissioner for Detention and Removal, the Director of the Office of Juvenile Affairs, regional directors, or district director, ***in his or her discretion*** and in consideration of factors listed in 8 CFR 212.5 and section 241(c) of the Act, may grant a stay of removal or deportation for such time and under such conditions as he or she may deem appropriate. Neither the request nor failure to receive notice of disposition of the request shall delay removal or relieve the alien from strict compliance with any outstanding notice to surrender for deportation or removal

> (b) Denial by the Commissioner, Deputy Commissioner, Executive Associate Commissioner for Field Operations, Deputy Executive Associate Commissioner for Detention and Removal, Director of the Office of Juvenile Affairs, regional director, or district director of a request for a stay is not appealable, but such denial shall not preclude an immigration judge or the Board from granting a stay in connection with a previously filed motion to reopen or a motion to reconsider as provided in 8 CFR part 3.

Id. (emphasis added).  The regulation clearly self-subscribes discretion in its adjudication, but this discretion is not directly derived from any apparent statute.  With Kucana in mind, the Form I-246 should be viewed as a routine regulation that allows Mr. Pomaquiza the opportunity – subject to eligibility - to defer his final order of removal.  Moreover, since the Form I-246 process does not allow Mr. Pomaquiza the opportunity to attack the underlying order of removal, it therefore cannot be read to sit behind the wall of INA § 242(g).  In addition, the regulation does not appear to be connected to any specific statute.[3] Despite

---

[3] Authority for section 241.6 is extremely broad and nonspecific listing Titles 5, 6, 8, and 18 of the U.S. Code.

listing numerous sections under Title 8, incredibly it does not reference INA 242(g) [8 U.S.C § 1252.]  That is very significant after <u>Kucana</u>.

For this reason, the Court is likely to find that APA review attaches to the denial of Mr. Pomaquiza's Stay Request.

      C.    <u>The Form I-246 and its regulations provide a definite standard by which to measure the Defendants actions in Mr. Pomaquiza's case.</u>

It is acknowledged that part of the Court's consideration of this matter requires identifying a sufficient standard for measuring the Defendants' action in denying the renewal of his Stay Request.

The first step in such an analysis under §701(a)(2) is to look at the statute to see if it sets forth a standard against which to measure the agency action. For example, in <u>Spencer Enterprises, Inc. v. U.S.A.</u>, 345 F.3d 683, 688 (9th Cir. 2003), the court determined that the statute setting forth eligibility requirements for employment based investor visas provided a standard to measure USCIS's decision of whether to approve a preference petition for such a visa. As such, the court found that there was law to apply and that there could be judicial review under the APA. Similarly, the court in <u>Pinho v. Gonzales</u>, 432 F.3d 193, 204 (3d Cir. 2005), found that under the APA, the court could review the denial of an adjustment of status application by USCIS where the denial was based on a statutory eligibility issue. The court found that the statute set forth standards for eligibility under which the court could review the agency action. It distinguished such statutory eligibility issues from denials of adjustment applications in the exercise of discretion. <u>See</u> <u>also</u> <u>Shah v. Chertoff</u>, No. 3:05-CV-1608-BH (K) ECF, 2006 U.S. Dist. LEXIS 73754, *28 (N.D. Tex. 2006) (finding that the issue subject to APA review was the

question of eligibility for an extension of L-1A visa – for which there were statutory guidelines to apply – and not the discretionary denial of such an extension).

Significant to this case, courts have generally found agency action to be wholly committed to agency discretion in limited circumstances where neither the statute nor the regulations provide any guidelines for the exercise of discretion. For example, courts have held that the BIA's refusal to reopen a case *sua sponte* is unreviewable on this basis. See, e.g., Ochoa v. Holder, 604 F.3d 546, 549 (8th Cir. 2010); Mejia-Hernandez v. Holder, 633 F.3d 818, 823 (9th Cir. 2011).[4]  But even in those circumstances, the circuit courts did not neatly align. See, Chehazeh v. A.G. of the United States, 666 F.3d 118 (3d Cir. 2012) (upholding district court review over BIA *sua sponte* re-opening of a final removal decision).

In this case, the Code of Federal Regulations section 241.6 establishes the procedures for an application for a Stay of Removal.  In so doing, it directs the Defendants to reference 8 C.F.R. § 212.5 and the statutory requirements in INA § 241(c).

> in his or her discretion *and in consideration of factors listed in 8 CFR 212.5 and section 241(c)* of the Act, may grant a stay of removal or deportation for such time and under such conditions as he or she may deem appropriate.

Id. (Emphasis Added). The Regulation plainly defines a standard for deciding the Form I-246. Under this standard, Mr. Pomaquiza continues to objectively satisfy the equitable factors listed under 8 C.F.R. § 212.5 (factors for consideration for the parole of aliens). Mr. Pomaquiza also meets all of the factors (also an articulated standard), listed in the February 2017 "Kelly Memo" *Enforcement of the Immigration Laws to Serve the National*

---

[4] These cases were decided in the time frame of Kucana v. Holder, 130 S. Ct. 827 (released, January 20, 2010).

*Interest* (DHS memo from Sec. John Kelly to Kevin McAleenan, Acting Commissioner, U.S. Customs and Border Protection, et al., Feb. 20, 2017).  Therein, the stated priorities are similar to those of his predecessor former DHS Secretary Jeh Johnson.[5]  Those being:

> [R]egardless of the basis of removability, Department personnel should prioritize removable aliens who: (I) have been convicted of any criminal offense; (2) have been charged with any criminal offense that has not been resolved; (3) have committed acts which constitute a chargeable criminal offense; (4) have engaged in fraud or willful misrepresentation in connection with any official matter before a governmental agency; (5) have abused any program related to receipt of public benefits; (6) are subject to a final order of removal but have not complied with their legal obligation to depart the United States; or (7) in the judgment of an immigration officer, otherwise pose a risk to public safety or national security. The Director of ICE, the Commissioner of CBP, and the Director of USCIS may, as they determine is appropriate, issue further guidance to allocate appropriate resources to prioritize enforcement activities within these categories-for example, by prioritizing enforcement activities against removable aliens who are convicted felons or who are involved in gang activity or drug trafficking.

Kelly Memo at pg. 2.  Notably, this is the same standard that was part of the Johnson Memo. Mr. Pomaquiza's enforcement category has not changed in any perceptible way.

As an aside, the Defendants may see this argument as being easily answered: re-issue the decision denying Mr. Pomaquiza's stay denial and this time spell out its reasons. But this would not *necessarily* resolve the matter indefinitely, because the Defendants' own guidelines and policy directs that an "Arbitrary application of enforcement tools must be avoided." See Chapter 20.9(b) of the *Detention and Deportation Officer's Field Manual* (updated March 27, 2006).  If INA § 242(g) does not apply, then the Defendants own policies open the door for District Court review under the APA.  The questions then become whether its decision was arbitrary and capricious, or the decision process was

---

[5] Jeh Johnson, Secretary, DHS, Policies for the Apprehension, Detention and Removal of Undocumented Immigrants.  (November 20, 2014)("Johnson Memo").

arbitrary and capricious, or lastly that the denial was based upon a misapprehension of Mr. Pomaquiza's eligibility – all reviewable by this Court.

Immediately relevant to this case, is that the Defendants had previously approved Mr. Pomaquiza's Stay Requests.  Only on September 5, 2017, was he determined to be ineligible without any clear explanation or guidance.  If arguing a Motion to Dismiss (or Summary Judgment), the Defendants are going to be hard-pressed to argue that section 241.6 does not establish a clear and definite standard for deciding a Form I-246.  For this reason, there is a strong likelihood of success on the underlying complaint and the Court's grant of a preliminary injunction is merited in this case.

D.    <u>Defendants' actions under APA review of the I-246 Denial are arbitrary and capricious and are likely to be redressed in favor of Mr. Pomaquiza.</u>

The APA provides that a district court may overturn the Defendants decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).  As discussed, *infra,* this includes review as to non-discretionary eligibility issues.  The standard for APA review is forthright.

An agency decision may be deemed arbitrary and capricious if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of the agency expertise." <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983); <u>Islander East Pipeline Co., LLC v. Connecticut Dep't. of Envtl. Protection</u>, 482 F.3d 79, 94 (2d Cir. 2007). Arbitrary and capricious action may also be found where subjective bad faith by agency decision makers deprives a petitioner of

fair and honest consideration. Tummino v. Hamburg, 2013 U.S. Dist. LEXIS 49666, 2013 WL 1348656, *20 (E.D.N.Y. April 5, 2013); accord, Latecoere Int'l, Inc. v. U.S. Dept. of Navy, 19 F.3d 1342, 1356 (11th Cir. 1994). The Court must consider whether the denial was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971). The Court must accept the agency's factual findings if those findings are supported by substantial evidence on the record as a whole. Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S. Ct. 1046, 117 L. Ed. 2d 239 (1992). Substantial evidence requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971).  The agency must "announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." Ogbolumani v. Napolitano, 557 F.3d 729, 735 (7th Cir. 2009). In applying this standard to the Defendants' decision to deny the Form I-246 Stay Request, the actions are without explanation.

Considering this standard in the context of the present complaint, Mr. Pomaquiza's circumstances have not changed in the year since his prior approval.  He continues to meet the elements for being listed as a low priority either under those set forth in 8 C.F.R. § 241.6 or its reference to 8 C.F.R. § 212.5, or the statutory requirements in INA § 241(c). He has no criminal record, four United States children, and has been compliant with the Defendants' reporting requirements. Denying his Stay Request renewal without any objective changes of circumstances or policy change is without any rational explanation or justification.  Mr. Pomaquiza's eligibility remains constant.

The decision denying his Form I-246 -- even allowing the broadest discretion -- is without plausible explanation and cannot be reconciled with the Defendants' existing regulations and policies.

E.    <u>The remaining considerations of harm, balance of the equities, and public interest are easily satisfied in favor of Mr. Pomaquiza.</u>

Under 8 C.F.R. § 1003.2: "Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider, shall constitute a withdrawal of such motion." While not directly applicable to a Request for Stay of Removal, it recognizes that if Mr. Pomaquiza leaves his stay request would be moot. Thus, his legal harm, if a preliminary injunction is not granted, is effectively self-proving. Moreover, the basis of the complaint is to obtain an order from the Defendants to decide his Stay Request in a manner that is other than arbitrary and capricious. It would be inequitable to allow the Defendants to remove Mr. Pomaquiza while their actions are under the court's review.

As to public interest, if Mr. Pomaquiza's case may represent an enlightening decision for similarly situated individuals.

Respectfully Submitted,

THE PLAINTIFFS


_/s/_____
Glenn L. Formica, ct21053
Formica Williams, P.C.
195 Church Street, 11th Floor
New Haven, Connecticut 06510
Telephone: (203) 789-1946
Facsimile: (203) 787-6766

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of September 2017, a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's CM/ECF system.

*/s/ Glenn L. Formica*

_____

Glenn L. Formica, Attorney